IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

EARNEST SEXTON and JO ANN SEXTON                                    PLAINTIFFS

vs.                                    CASE NO: 3:06CV00163 BSM

WAYMOND HUTTON, ET AL.                                              DEFENDANTS

## ORDER

Plaintiffs, Earnest Sexton ("Sexton") and Jo Ann Sexton (collectively "Plaintiffs"), bring this action pursuant to 42 U.S.C. § 1983 and the Arkansas Civil Rights Act (ACRA), Ark. Code Ann. §16-123-105, alleging that Defendants, Delbert Robbins ("Robbins") and Waymond Hutton ("Hutton") (collectively "Defendants"), violated Sexton's constitutional rights. Defendants filed a motion for summary judgment and Plaintiffs have responded. Having considered the motion for summary judgment, the response to the motion for summary judgment, and the entire record, the Court finds that Defendants are entitled to summary judgment on Plaintiffs' illegal arrest claims. The claims against Defendant Robbins in his official capacity and against Hutton in his individual capacity are hereby dismissed. In all other respects, Defendants' motion for summary judgment (Doc. No. 57) is denied.

### I. BACKGROUND

Ashley Walker, a minor, alleged that Sexton raped her. On January 15, 2003, Robbins, a Lawrence County Sheriff's deputy, went to Plaintiffs' home to discuss the allegations with Sexton. Robbins arrested Sexton and took him to the Lawrence County Detention Center where Sexton was booked into custody and taken to a 12-person jail cell which Sexton claims housed seven convicted

felons.  What happened next is in dispute.  Sexton claims that Robbins told the other individuals in

Sexton's cell that Sexton had been charged with raping a minor.  Defendants counter that Robbins

did not go back to the cell but that Sexton was placed in the cell by a jailer, Wes Crisler ("Crisler").

Defendants claim that it was Sexton who told his fellow cellmates that he was jailed for raping a

minor.

The parties do not dispute that sometime after being placed in the cell, Sexton was severely

beaten by three of his cellmates, including Jason Jones.  Sexton received medical treatment for his

injuries and was released from custody.  Sexton later pled no contest to a reduced charge of sexual

abuse in the 4th degree and was sentenced to a one year suspended sentence with probation.

## II.  *STANDARD OF REVIEW*

Summary judgment is appropriate if the entire record shows that there are no genuine issues

of material fact in dispute and the moving party is entitled to judgment as a matter of law.  Fed. R.

Civ. P. 56(c).  The burden of proof is on the moving party to set forth the basis of its motion.  As a

prerequisite to summary judgment, a moving party must demonstrate "an absence of evidence to

support the non-moving party's case."  *Celotex Corp. v.  Catrett*, 477 U.S. 317, 325 (1986).  Once

the moving party has properly supported its motion for summary judgment, the non-moving party

must "do more than simply show there is some metaphysical doubt as to the material facts."

*Matsushita Elec. Indus. Co. v.  Zenith Radio Corp*., 475 U.S. 574, 586 (1986).  The non-moving

party may not rest solely on the allegations or denials of its pleadings but must "come forward with

'specific facts showing that there is a genuine issue for trial.'" *Id*. at 587 (quoting Fed.R.Civ.P.

56(e)).

"[A] genuine issue of material fact exists if (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.*, 49 F.3d 399, 401 (8th Cir. 1995). The inferences to be drawn from the underlying facts must be viewed in the light most favorable to the party opposing the motion. *Matsushita*, 475 U.S. at 587 (citations omitted).

*III.  ANALYSIS*

A.  INDIVIDUAL CAPACITY CLAIMS

Hutton and Robbins assert that they are entitled to qualified immunity on Sexton's 42 U.S.C §1983 claims against them. "Qualified immunity is available to government officials who prove their conduct did 'not violate clearly established statutory or Constitutional rights of which a reasonable person would have known.'" *Hill v. Scott*, 349 F. 3d 1060, 1071 (8th Cir. 2003) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). To avoid summary judgment based on qualified immunity, plaintiffs must (1) "assert a violation of a constitutional right; (2) demonstrate that the alleged right is clearly established; and (3) raise a genuine issue of fact as to whether the official would have known that his alleged conduct would have violated the plaintiff's clearly established right." *Brockinton v. City of Sherwood, Arkansas*, 503 F. 3d 667, 672 (8th Cir. 2007 ) (internal quotations and citation omitted).

1.  Claims Against  Robbins

(a) Illegal Arrest of Sexton

Sexton claims that his arrest was illegal because Robbins arrested him without a warrant and exigent circumstances did not exist. When analyzing this claim, the court must determine whether Robbins had probable cause to arrest Sexton because the Fourth Amendment prohibits an arrest

without probable cause.  *See Smithson v. Aldrich*, 235 F. 3d 1058, 1062 (8th Cir. 2000).  Rule 4.1 of the Arkansas Rules of Criminal Procedure provides that a law enforcement officer may arrest a suspect without a warrant if the officer has reasonable cause to believe that the person has committed a felony.  In Arkansas, "there is no substantive distinction between the terms 'reasonable cause' and 'probable cause.'"  *Champlin v. State*, 98 Ark. App. 305, *5 (2007).  The court finds that Ashley Walker's rape complaint against Sexton provided Robbins the reasonable cause necessary to arrest Sexton.  Therefore, Robbins' warrantless arrest of Sexton did not violate a clearly established statutory or Constitutional right.

Sexton points to the court a document produced by an agent of the Arkansas State Police to support an argument that he was arrested merely for having alcohol on his breath.  Nothing in that document, however, indicates that he was incarcerated for having alcohol on his breath.  That document simply shows that Robbins tried to talk to Sexton at the jail about the alleged rape but did not do so because Robbins smelled alcohol on Sexton's breath.

Further, Sexton asserts that it is clear that his arrest was illegal because Robbins never charged him.  The error in this argument is that the decision whether to prosecute is within the discretion of the prosecutor and does not necessarily depend on whether the arresting officer had probable cause to make the arrest.  Indeed, the Arkansas constitution clearly distinguishes the arrest function from the prosecution function.  *See* Ark. Const. Amend. 21, § 1 (all offenses . . . heretofore required to be prosecuted by indictment may be prosecuted either by indictment by a grand jury or information filed by the Prosecuting Attorney); *State v. Knight*, 318 Ark. 158, 162 (1994) (Arkansas constitution provides that the duty of charging an accused with a felony is reserved to the grand jury

or the prosecutor).  For these reasons, the court is unpersuaded by Sexton's argument that his arrest was illegal simply because he was not charged.

In that the court finds that Robbins's arrest of Sexton violated no constitutional rights, Robbins is entitled to summary judgment on the illegal arrest claim.  *See Saucier v. Katz*, 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity.")

(b) Failure to Protect Sexton

Plaintiffs contend that Robbins is individually liable for his failure to protect Sexton from the brutal attack by his cellmates. "Because being subjected to assault is not part of the penalty that criminal offenders [must] pay for their offenses, the eighth amendment's prohibition against cruel and unusual punishment requires prison officials to take reasonable measures to guarantee inmate safety by protecting them from attacks by other prisoners." *Young v. Selk*, 508 F. 3d 868, 871-72 (8th Cir. 2007) (internal quotations and citations omitted).  Because Sexton was a pretrial detainee, his claims are analyzed under the Fourteenth Amendment's Due Process Clause.  *Crow v. Montgomery*, 403 F. 3d 598, 601 (8th Cir. 2005).  Although this is the case, pretrial detainees are entitled to protection only as great as that afforded convicted prisoners under the Eighth Amendment *Id.*  This is true because courts apply the same deliberate indifference standard that is applied to failure to protect claims made by inmates.  *Butler v. Fletcher*, 465 F. 3d 340, 344 (8th Cir. 2006).

"In order to establish an eighth amendment failure-to-protect claim, a plaintiff must show that the prison official was deliberately indifferent to a "substantial risk of serious harm..." *Young,* 508 F. 3d at 872 (*quoting Farmer v. Brennan*, 511 U.S. 825, 828 (1994)). Therefore, Sexton must first establish that, when viewed objectively, the deprivation of his rights was sufficiently serious. *Irving*

*v. Dormire,* 519 F.3d 441, 446 (8th Cir. 2008).  He must then prove that Defendants "had a sufficiently culpable state of mind, that is, [that] Defendants were deliberately indifferent to a serious risk of harm to him."  *Id.*  "An official is deliberately indifferent if he or she actually knows of the substantial risk and fails to respond reasonably to it."  *Young v. Selk*, 508 F. 3d at 873.  "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . .  and a factfinder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer v. Brennan,*   511 U.S. 825, 842 (1994).

Robbins's involvement in Sexton's incarceration is disputed.  Two jailers, Juanita Bryant and Wes Crisler, testified that Robbins merely told Crisler to "lock up" Sexton.  However, Sexton and Jason Jones, one of Sexton's cellmates, both testified that it was Robbins who brought Sexton back to the cell.   Jones further testified that he had informed Robbins, Hutton, and others at the jail that he would "beat up" homosexuals and child molesters.  He stated that everyone at the jail knew of his threat to do so.   He claims that he had assaulted nine or ten other inmates prior to the incident involving Sexton.  Although this was his claim, he could specify only one other beating incident in which he was involved prior to the beating of Sexton.  Jones further claimed that he "checked out Sexton" when Sexton was placed in the cell and that  he  beat Sexton about six hours later.  The record, however, shows that Sexton was beaten by Jones and two other cellmates approximately one hour after being placed in the cell. Jones further stated that a jail trustee told him that Robbins and others "up front" had sent back word to Jones that it would be alright to "mess up" Sexton, and that there would be no repercussions.

-6-

Although Jones's testimony is contradicted and there is support for the proposition that his testimony was exaggerated, the court cannot, at this point, make credibility determinations or weigh the evidence.  *See Johnson v. Crooks*, 326 F. 3d 995, 1007-08 (8th Cir. 2003) (credibility determinations and the weighing of evidence are not appropriate at the summary judgment stage). Therefore, there is a genuine dispute as to what Robbins knew and what action he took with regard to his knowledge.  In that these are "predicate facts material to the qualified immunity issue,"the court cannot find, as a matter of law, that Robbins is entitled to qualified immunity.  *Id.* at 1008 (citations omitted).   That is, there is a genuine factual dispute as to whether Robbins was aware of the substantial risk of placing Sexton in the cell with Jones and was deliberately indifferent to the risk of harm to Sexton.  Therefore, the court denies Sexton's request for qualified immunity on the failure to protect claim.

## 2. Claim Against Hutton

 Hutton was the Lawrence County Sheriff during the period of Sexton's incarceration.  He asserts that he is entitled to qualified immunity as to Sexton's claims against him in his individual capacity resulting from the beating endured by Sexton.  Hutton supervised Robbins, and a "supervisor may be held individually liable under § 1983 if he directly participates in the constitutional violation or if he fails to train or supervise the subordinate who caused the violation. The standard of liability for failure to train is deliberate indifference. The standard of liability for failure to supervise is 'demonstrated deliberate indifferent or tacit authorization of the offensive acts.'" *Brockinton*, 503 F. 3d at 673 (citations omitted).

The failure to train argument is not properly before the court.  When Plaintiffs moved to amend the complaint to raise a failure to train claim, the court referred that motion to the Magistrate

Judge for recommended disposition.  The Magistrate Judge recommended that the court deny the motion because it found that permitting the amendment would unduly prejudice Defendants.  The court adopted the Magistrate Judge's recommendation on March 4, 2008, and denied Plaintiffs' motion to amend.

Without the failure to train argument available to them, Plaintiffs argue that Hutton directly participated in the alleged constitution violations.  In support of this argument, they point out that Jones claimed that he told Hutton that he would beat up any child molester.   The record is clear, however, that Hutton was not present at the time Sexton was brought to the jail and therefore had no direct involvement with the placement of Sexton in a cell with Jones.  Moreover, Hutton did not learn of the beating until after it had occurred.

The case would be different if Hutton was "deliberately indifferent to or tacitly authorized the offending acts." *Vaughn v. Greene County, Arkansas*, 438 F. 3d 845, 851 (8th Cir. 2006) (internal quotation marks and citation omitted).  Here, however, there is no evidence that Hutton knew that Sexton had been arrested, or that he had been placed in a cell with Jones or with other convicted felons.  Indeed, Hutton did not tell Jones that Sexton was a child molester and would have had no knowledge of how Jones learned of the reason for Sexton's arrest.

Based on the record, the court cannot find that Hutton was deliberately indifferent to Sexton's right to be free from harm or that he tacitly authorized the offending acts of Robbins.  Therefore, the court finds that Hutton is entitled to qualified immunity and the claims against him in his individual capacity are dismissed.

B.  <u>OFFICIAL CAPACITY CLAIMS</u>

Plaintiffs have also sued Defendants in their official capacities.  As Sheriff, Hutton was the

final authority for the management and control of the Sheriff's Department, and was responsible for the hiring, training, and supervision of employees of his Department.  It must be noted that since the filing of this action, Hutton has retired and pursuant to Fed. R. Civ. P. 25(d), Dan Ellison, the current Sheriff, has been substituted for Hutton in his official capacity.  A claim against an individual in his official capacity is tantamount to a suit against the county itself.  *Kentucky v. Graham*, 473 U. S. 159, 166 (1985).  The county is liable only where a policy or custom caused the constitutional injury.  *Bd. of County Com'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397, 403 (1997).  To hold the county liable, the court must first find individual liability on the underlying substantive claim.  *McCoy v. City of Monticello*, 411 F.3d 920, 922 (8th Cir. 2005).

Hutton testified that he had a written policy in effect concerning operations of the Lawrence County Detention Center and that his policy largely tracked the State of Arkansas's standards on law enforcement and jail policies.  Neither the Lawrence County policies nor the State of Arkansas's standards were provided to the court.  Therefore, the court is left to guess what exactly the standards provide and what portions Hutton applied to the jail.

Hutton claims Lawrence County's policy was to place individuals in cells according to whether they were arrested for misdemeanors or felonies, or whether they were convicted felons. Pretrial detainees were not to be commingled with the convicted felons.  There is evidence, however, that the policy asserted by Hutton was either not actually in place or not followed.  For example, Crisler testified that in 2003, Hutton told him to put together in a cell, a convicted felon and a pre-trial detainee who was charged with a felony.

A number of Sexton's cellmates were convicted felons who were parole violators.  It is unclear whether these inmates were awaiting revocation hearings or awaiting transfer to the Arkansas

Department of Corrections.  It is clear, however, that parole violators are not similarly situated with pretrial detainees.  Parole violators stand convicted of criminal charges while pretrial detainees are presumed innocent for purposes of the Eighth Amendment.  *See Faheem-El v. Klincar*, 841 F.2d 712 (7th Cir. 1988) (because parolees have been previously convicted they are not in same position as non-parolees charged with committing criminal offenses).  For these reasons, the court finds that a reasonable jury could find that Lawrence County's policies failed to adequately classify and separate detainees from convicted felons, or that those policies failed to provide for  adequate screening of individuals with a propensity for violence.  Hence, the court finds that a reasonable jury could find that Lawrence County's policies caused the violation of Sexton's right to be free from harm.  *See Doe v. Washington County*, 150 F. 3d 920, 923 (8th Cir. 1998) (holding county liable for failing to adequately protect juvenile from assault at the hands of other detainees).  Therefore, the court denies Hutton's motion for summary judgment as to Plaintiffs' claims against him in his official capacity.

It is clear that Robbins is entitled to summary judgment on Plaintiffs' claims against him in his official capacity.  Robbins was not a policy maker.  Therefore, Robbins's motion for summary judgment is granted as to Plaintiffs' claims against him in his official capacity.

C.     ARKANSAS CIVIL RIGHTS ACT CLAIMS

Defendants have not moved for summary judgment on Plaintiffs' separate claim under the Arkansas Civil Rights Act (ACRA).  In their brief, however, Plaintiffs ask that the court apply the conscious indifference standard when analyzing these claims.  The Arkansas Supreme Court recently held that the standard applicable to claims under the ACRA involving a pretrial detainee is "deliberate indifference."  *Grayson v. Ross*, 369 Ark. 241 (2007).  *See also City of Fayetteville v. Romine*, __ Ark.__, No. 07-1088 (May 1, 2008).  In that the court has found that questions of fact

exist as to whether Robbins was deliberately indifferent, Plaintiffs can proceed with their claim under the ACRA.

### III.  CONCLUSION

In sum, the Court finds that Defendants are entitled to summary judgment on Plaintiffs' illegal arrest claims.  The claims against Defendant Robbins in his official capacity and against Hutton in his individual capacity are hereby dismissed.  In all other respects, Defendants' motion for summary judgment (Doc. No. 57) is denied.

IT IS SO ORDERED this 4th day of June, 2008.

_____

UNITED STATES DISTRICT JUDGE