IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

EARNEST SEXTON                                                                        PLAINTIFF


vs.                                      NO: 3:06CV00163BSM

DAN ELLISON, Sheriff of Lawrence County, Arkansas,
in His Official Capacity.                                                             DEFENDANT

ORDER

On February 24, 2009, a twelve-person jury ruled for plaintiff and awarded him

$30,000 in damages against defendant Dan Ellison, in his official capacity as Sheriff of

Lawrence County, Arkansas.  Prior to trial, JoAnn Sexton was dismissed as a plaintiff and

Dan Ellison was substituted for Waymond Hutton, the former sheriff.  Defendant has now

filed a motion for judgment as a matter of law.

I.  BACKGROUND

This case arose on January 15, 2003, when plaintiff was arrested for rape and taken

to the Lawrence County Detention Center.  While in the cell, he was severely beaten by three

of his cellmates.

Defendant moved for a directed verdict at the close of plaintiff's case.  Pursuant to

Rule 50 of the Federal Rules of Civil Procedure, defendant's motion was construed as a

motion for judgment as a matter of law.  The court dismissed plaintiff's claim that defendant

violated his constitutional rights by placing him, a pretrial detainee without a prior felony

record, in the cell with pretrial detainees with prior felony convictions.  The only issue that

remained to be tried was plaintiff's claim that defendant violated his constitutional rights by placing him, a sex offense detainee, in the cell with non-sex offense detainees, although defendant had notice that the non-sex offense detainees posed a physical threat to the sex offense detainees.

The jury was instructed as follows:

To find that the Sheriff of Lawrence County violated Ernest Sexton's constitutional right to be free of harm from persons held in the Lawrence County Jail, Ernest Sexton must prove each of the following elements:

First, that Lawrence County Sheriff had in place, on the date of Sexton's injuries, a policy of co-mingling individuals charged with sex offenses with others who were not;

Two, that the Sheriff was aware of the substantial risk of harm to pretrial detainees by the policy of co-mingling sex offenders with others who were not charged with sex offenses;

Third, that the Sheriff was deliberately indifferent to the rights of plaintiff to be free from harm; and

Fourth, that plaintiff was damaged as a direct result of the Sheriff's policy of co-mingling sex offenders with non-sex offenders. [Substituted Court's Instruction No. 5]

The court further instructed the jury as follows:

Deliberate indifference is established only if there is actual knowledge of a substantial risk that the plaintiff will be harmed and if the defendant disregards that risk by intentionally refusing or failing to take reasonable measures to deal with the problem.  Mere negligence or inadvertence does not constitute deliberate indifference.

## II. STANDARD OF REVIEW

"Judgment as a matter of law is appropriate only when the nonmoving party fails to

present enough evidence to permit a reasonable jury to decide in his favor.  The nonmoving party must present more than a mere scintilla of evidence,  and [the court is ] required to view the evidence in the light most favorable to the prevailing party. The moving party bears a heavy burden on a motion for JAML."  *Gill v. Maciejewski*, 546 F.3d 557, 562 (8th Cir. 2008) (internal quotation marks and citations omitted).  *See Canny v. Dr. Pepper/Seven-Up Bottling Group, Inc.*, 439 F.3d 894, 899-900 (8th Cir. 2006) (quoting Fed. R. Civ. P. 50(a)(1))  ("A judgment as a matter of law is appropriate if 'a party has been fully heard on an issue and there is  no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue.'")

## III.  DISCUSSION

Defendant argues that the evidence does not support a finding that there was a known risk of  placing sex offenders in the same cell as non-sex offenders.  If there was no known problem then, according to defendant, there can be no deliberate indifference.  Defendant relies on *Bd of County Com'rs of Bryan County, Oklahoma v. Brown*, 520 U.S. 397 (1997) (*Brown*)  and *Canton v. Harris*, 489 U.S. 378 (1988)  to support its position.  According to defendant, the evidence in the record only established a possibility of a risk, not a known risk.

The evidence, when viewed in the light most favorable to plaintiff, establishes that Jason Jones, who was a detainee at the time, admitted that he beat plaintiff.  He testified that he had been in the Lawrence County Jail a number of times, and that he had been in about

seven or eight fights with individuals whom he did not want in his cell.  Jones had previously assaulted Jeff Tribble, another detainee at the Lawrence County Jail, whom he alleged had made a sexual advance toward him.   Jones's assault on Tribble occurred a few weeks prior to the attack on plaintiff.

Jones testified that he made it clear to the jail employees that he would physically abuse any homosexual, child molester, or rapist that was placed in the cell with him.  He claims to have made statements to this effect on a regular basis to the jail employees.  He also claims that the jailer at the time, Delbert Robbins, winked at him when he brought plaintiff back to his cell.  Jones took this as a signal that plaintiff was a child molester, whom Jones was to abuse.  Jones also stated that he heard Robbins asking plaintiff about  assaulting a minor female.  Jones says he beat plaintiff because he believed plaintiff was a child molester.

No one corroborated Jones's testimony that he told jail employees that he would abuse detainees charged with sex crimes.  Jones's testimony regarding his assault on Tribble was corroborated, but the jail employees testified that they believed the assault occurred after Tribble made a sexual advance toward Jones.  None of the jail employees claimed to know of the seven or eight other incidents in which Jones claims to have beaten other detainees because they were child molesters or homosexuals.  One of the jailers, Wes Crisler, testified that Jones had caused no trouble in the sixty days immediately preceding plaintiff's arrival. Furthermore, none of defendant's employees admitted to telling the other detainees why plaintiff was being detained.

One of the jail employees, Juanita Bryant, admitted that fights were not uncommon in the jail.  She testified, however, that the incident involving plaintiff was the only time a detainee had been beaten because he had been charged with a sex crime.

Hutton, the sheriff at the time of the incident, admitted that part of his duty to protect prisoners was to classify and segregate them from each other if they were a danger to each other.  He also agreed that people charged with sex crimes could have been at a higher risk of being beaten by other detainees.  He testified that, other than in this case, in the fourteen years he served as sheriff, he had never had anyone beaten because they were charged with a sex crime.  He said he never spoke to Jason Jones, and was unaware of Jones's alleged threat to beat up homosexuals and child molesters.

Ellison, who was not the sheriff at the time of the incident, admitted that to maintain a safe jail it is important to classify and segregate prisoners so that they are not put in situations where they are likely to attack each other.  He stated that in his experience people charged with sex crimes needed to be segregated from the general population because of the increased risk of danger.

Wes Crisler, the jailer, knew that plaintiff had been charged with a sex crime.  He placed plaintiff in the cell with other pre trial detainees who were charged with felonies.  He testified that he would have taken plaintiff out of the cell if he had known that plaintiff was threatened.  He also agreed that those charged with sex offenses are at an increased risk of being assaulted by other prisoners.

The Sheriff, who was the official policy maker with regard to county policy, was aware that an individual charged with a sex crime was at an increased risk of being assaulted by other prisoners.  The evidence supports a finding that the risk of placing sex offenders with other detainees was not abstract, but was well-recognized among jail employees.

To succeed on his claim, plaintiff had to show that the jail's policy of placing sex offense detainees, such as himself, in cells with non-sex offense detainees was carried out with "deliberate indifference as to its known or obvious consequences."  *City of Canton v. Harris*, 489 U.S. 378, 388 (1989). Deliberate indifference or tacit authorization requires "notice to the officials" of the misconduct.  *Ware v. Jackson County, Missouri*, 150 F.3d 873, 880 (8th Cir. 1998).   *See Brown*, 520 U.S. at 410 ("deliberate indifference" requires proof that the municipal actor disregarded a known or obvious consequences of his action).

The evidence, when taken in the light most favorable to plaintiff, shows that the Sheriff and other jail employees were aware of the known risk of placing plaintiff, a sex offense detainee, in the cell with Jones and the other non-sex offense detainees.  It is apparent that the jury believed Jones's testimony that he told the sheriff and the other jail employees that he would commit acts of violence against homosexuals and those charged with sex offenses.  It is also apparent that the jury believed Jones's testimony that the sheriff and other jail employees were aware that he had committed many acts of violence against other sex offenders and that he stood ready to do it again.  The evidence also shows that, although defendant and the jail's employees were aware of the risk to plaintiff, they failed

-6-

to take appropriate measures to prevent the danger.

Accordingly, the motion for judgment as a matter of law [Doc. No. 123] is denied. Defendant's motion for extension of time to file a response to the applications for attorneys' fees [Doc. No. 131] is granted.  Defendant shall have fourteen days from the date of this order to file his response to the motions for attorneys' fees.

IT IS SO ORDERED this 3rd day of June, 2009.

_____
UNITED STATES DISTRICT JUDGE